IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:21-cr-121-DJN |
| | ) | |
| v. | ) | |
| | ) | |
| VOLANTE MCKEEVER, | ) | |
| | ) | |
| Defendant. | ) | |

### STATEMENT OF FACTS

The parties stipulate that allegations contained in Count One of the Indictment and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt:

1. Beginning before at least 2015, and continuing through on or about July 18, 2019, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and within the jurisdiction of the Court, as well as elsewhere, defendant VOLANTE MCKEEVER did unlawfully, knowingly, and intentionally, combine, conspire, confederate, and agree with Stephen Andre Taylor, Shanice Nicole Bullock, Dontay Leroy Douglass Cox, Kim Leslie Williams, Travian Taylor, and Rameesha Nokia Smith, as well with others, both known and unknown to the grand jury, to commit the following offenses against the United States: paying bribes to Bureau of Prisons ("BOP") employees, that is, to directly, indirectly, and corruptly give, offer, and promise a thing of value to a public official, with intent to induce a public official to do and omit to do an act in violation of the public official's lawful duty, in violation of Title 18, United States Code, Section 201(b)(1)(C).

2. At all times relevant to the indictment in this matter, Title 18, United States Code,

1

Section 1791 and BOP regulations prohibited inmates' possession of "prohibited objects," including controlled substances, cigarettes, and cellular telephones. BOP regulations also prohibited inmates from gambling. The duties of a correctional officer and case manager with the United States Bureau of Prisons included the enforcement of federal law and BOP regulations pertaining to inmates' possession of prohibited objects and engaging in gambling.

3. Cox was an inmate at FCI Petersburg-Medium from on or about January 23, 2014, until on or about July 18, 2019, when he was transferred to another institution. Kim Leslie Williams is Cox's mother. Stephen Andre Taylor and Shanice Nicole Bullock were, respectively, a case manager and correctional officer at FCI Petersburg-Medium at various times while Cox was incarcerated there. During his incarceration at FCI Petersburg-Medium, Cox ran a gambling operation contrary to BOP regulations and, with the assistance of other inmates, obtained and sold contraband, including Suboxone, heroin, cigarettes, and cellular telephones to inmates. Travian Taylor, another inmate at FCI Petersburg-Medium, assisted Cox with the distribution of contraband and running the gambling operation. Smith was one of Cox's girlfriends and regularly visited him at FCI-Petersburg-Medium. MCKEEVER was also a girlfriend of Cox's.

4. Stephen Taylor and Bullock were both aware of Cox's involvement with the distribution of contraband and operation of a gambling operation. Stephen Taylor and Bullock both deliberately failed to enforce BOP regulations barring distribution of contraband and gambling against Cox and other inmates involved with Cox. In return for their doing so, Cox facilitated payments to Stephen Taylor and Bullock via various intermediaries, including, but not limited to, Williams, MCKEEVER, and Smith. These payments were made via cash deliveries, use of the payment application "Cash App," Western Union, and Walmart's Walmart-2-Walmart

2

cash transfer program.

5. Between October 2017, and April 2019, MCKEEVER visited Cox 54 times at FCI Petersburg-Medium. During many of these visits, MCKEEVER delivered contraband, including suboxone, to individuals for them to smuggle into the facility. Furthermore, on at least two occasions, MCKEEVER, acting on directions from Cox and Williams, delivered cash in the total approximate amount of $30,000 to Bullock and Stephen Taylor at locations near the prison.

6. Between in or around December 2017, and February 15, 2018, near FCI Petersburg, MCKEEVER delivered an Apple iPhone to Stephen Andre Taylor with the understanding that Stephen Andre Taylor would deliver the iPhone to Cox. At that time, Stephen Andre Taylor told MCKEEVER to advise Cox that it was unwise for Cox to use an iPhone because the signals made it more likely that his use of the phone would be detected.

7. Postage stamps were used as currency at FCI Petersburg-Medium. However, when inmates lacked funds to pay for contraband or to pay gambling debts, the inmates' relatives or associates outside the prison transferred funds to Williams, Smith, or other co-conspirators, with Cox then crediting the inmates with postage stamps equal in value to the amounts transferred. Furthermore, because Cox was paid in postage stamps, this exchange system also allowed him to convert his postage stamp profits into currency that was then used to compensate MCKEEVER, Smith, Williams, and other co-conspirators who assisted with the smuggling of contraband and the payment of bribes to correctional staff. These payments, some of which are summarized in paragraphs 8-12 of this Statement of Facts, were also made via Western Union, Walmart's Walmart-2-Walmart cash transfer program, and Cash App.

8. On December 8, 2017, MCKEEVER sent $200 to Stephen Taylor via Western Union.

9. On February 1, 2018, MCKEEVER sent Stephen Taylor $600 via Walmart-2-Walmart.

10. On February 18, 2018, MCKEEVER sent $600 to Stephen Taylor via Western Union.

11. On February 18, 2018, MCKEEVER sent Stephen Taylor $1,800 via Cash App.

12. On the following dates, MCKEEVER received via Walmart-2-Walmart the following sums from two different associates of inmates at FCI Petersburg-Medium (one of whom had also transferred funds to Williams via Walmart-2-Walmart):

- January 11, 2018: $1,500
- February 4, 2018: $1,400

13. Between February 1, 2018, and October 25, 2018, MCKEEVER, using her cell phone number xxx-xxx-2522, had 98 voice or text message contacts with Stephen Taylor at his cell phone numbers xxx-xxx-9806 or xxx-xxx-0278. Stephen Taylor lived in North Carolina at the time and did not know MCKEEVER socially.

14. On September 17, 2019, at a proceeding where MCKEEVER was placed under oath, MCKEEVER made the following admissions:

> a. MCKEEVER and Cox met in Baltimore, Maryland prior to his incarceration at FCI Petersburg. While Cox was incarcerated at FCI Petersburg, they reconnected in approximately 2016.
>
> b. During the time MCKEEVER and Cox dated, MCKEEVER and Williams visited Cox at FCI Petersburg on a regular basis. MCKEEVER, Williams, and Cox discussed the introduction of contraband, specifically Suboxone and tobacco during some of these visits.
>
> c. MCKEEVER delivered suboxone, tobacco, and a cell phone to Stephen Taylor on behalf of Cox and Williams.

d. MCKEEVER, at the direction of Williams and Cox, would travel from Baltimore, Maryland to locations near FCI Petersburg to make cash payments in the total approximate amount of $30,000 to bothStephen Taylor and Bullock. MCKEEVER specifically recalled paying Stephen Taylor $7,500 at a Target in Petersburg, Virginia. MCKEEVER knew that these payments to Stephen Taylor and Bullock were intended to facilitate and allow the introduction of contraband into FCI Petersburg.

e. Stephen Taylor advised MCKEEVER to meet him at a location farther from FCI Petersburg to avoid detection of his acceptance of bribes by other correctional officers at FCI Petersburg.

f. At the same time, MCKEEVER received checks from various inmates through their inmate accounts. MCKEEVER discovered through discussions with Williams and Cox that these checks for inmates were sent in relation to the contraband scheme being run by Cox at FCI Petersburg.

g. While incarcerated at FCI Petersburg, Cox would call MCKEEVER from Stephen Taylor's office.

15. This statement of facts recites facts necessary to provide an independent factual basis for the defendant's guilty plea. It does not necessarily recite all facts related to the defendant's involvement in the offense conduct or other criminal activity.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Kenneth R. Simon, Jr.
Assistant United States Attorney

_____
Michael C. Moore
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between myself and the United States, I stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
VOLANTE MCKEEVER
Defendant

I am VOLANTE MCKEEVER's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Fernando Groene
Counsel for Defendant