IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:21cr121 (DJN) |
| | ) | |
| VOLANTE MCKEEVER, | ) | |
| Defendant. | ) | |

**POSITION ON SENTENCING AND
JOINT MOTION FOR VARIANCE SENTENCE**

COMES NOW the defendant VOLANTE MCKEEVER (hereinafter "McKeever"), by and through counsel, and pursuant to Section 6A1.2 of the *Sentencing Guidelines and Policy Statements* and this Court's Sentencing Procedures Order, submits that she has reviewed the Presentence Investigation Report ("PSR") prepared in this case and does not have any objection.

McKeever avers that United States Sentencing Guidelines ("U.S.S.G.") have been properly calculated (Total Offense Level 19, Criminal History III, range of 37 to 46 months) (PSR 89). The plea agreement reflects that given McKeever's past participation in the illegal conduct (which she had discontinued as the conspiracy continued to exist), her previous cooperation with the government (which earned her transactional immunity from which she walked away) and her personal situation, the parties jointly agreed that a variance of 4 levels is appropriate and so recommend to the Court (ECF 22, par. 4) If the variance is granted, McKeever's Total Offense Level would be 15 and the advisory sentencing range of 24-30 months' incarceration.  Further, the agreement provides that neither side would seek a sentence above or below that particular range (ECF 22, par. 4).  This stipulation is reflected in the PSR at par. 5.

Accordingly, for the reasons set forth below, McKeever respectfully requests a variance sentence of 24 months' imprisonment, the lowest possible in this advisory range. Such sentence would be sufficient but not greater than necessary and complies with the factors set forth by Congress in Title 18, United States Code, Sections 3553 (a) and (b).

## INTRODUCTION AND PERSONAL BACKGROUND

McKeever is a 36 years old, single mother of two children with special needs. The oldest is A.N., age 18, who has some learning disabilities. The youngest son, L.N. age 15, is autistic. The children lived with McKeever in Baltimore, MD., prior to her arrest (PSR 75). Currently, the two boys are staying with their father (PSR 73, 74). McKeever and the boys' father, A.N., were in a romantic relationship for approximately 10 years. They lived together with the children. A.N. was an alcoholic and physically abusive to McKeever. The children saw and lived through the chaos of that relationship (PSR 73). A.N. has since controlled his alcohol consumption in the last three to four years.  A.N. has a good relationship with the boys (PSR 73).

McKeever was born in Baltimore from the marital union of her parents (PSR 68). They divorced when she was 10. Her father was a heroin addict who was often missing from the home (PSR 69). He got clean 2 years after the divorce and remained close to McKeever until his passing on April 24, 2021 (PSR 68-69). He worked as a trash collector and remarried. He was a standup guy who paid child support and honored his wife for over 35 years (PSR 69). He rescued McKeever when she was 14 after she informed him that one of Mom's boyfriends had sexually abused her. McKeever remained with her father until that "boyfriend" was gone (PSR 70). There was little communication between McKeever's parents after their split (PSR 70).

 McKeever's mother married a total of five times; twice before the union with McKeever's father and twice after (PSR 71). Some of the men that the mother loved had a

negative impact in young Volante's life (many different men coming and going, actual physical abuse and having a stepfather who was incarcerated for federal drug charges) (PSR 70-71). Despite that McKeever loved her mother. They were very close. McKeever's basic physical needs of food and shelter were met (PSR 71). McKeever's mother died in March 2020 and it affected her profusely.  She was close to both parents (even if they did not have any relationship). They died within the span of about a year. This threw McKeever for a loop. As a result she began to feel more anxiety and, as a result to cope with it, smoked more marijuana, drank more alcohol, and began to indiscriminately use Xanax, Oxycodone, and Suboxone. It continued until her arrest in December 2021 (PSR 77-78).  She is willing to enter into a drug and substance abuse treatment program to address her addiction (PSR 78).

Her father died in 2021 and four months after her father's death, the FBI came calling her to fulfill her last obligation by testifying at the sentencing of Cox.  McKeever's frame of mind in August 2021 was different than it was in August 2019 when she was approached about and decided to cooperate with the government. By August 2021, she had lost both parents and was deep into substance abuse, both alcohol and prescription drugs. She was also experiencing issues which should have been treated by a mental health counselor. She refused to take care of herself and refused to help the government. As a result, here she is. She is currently going on her seventh month of confinement with a several more months to follow.

 McKeever began dating K.Y. and married him in early 2019. After she began dating K.Y., she cut the ties with Cox and his mother Williams and separated herself from their poisonous bribery and BOP smuggling ring (PSR 72; 30.5). She and K.Y. separated a few months later due to incompatible opinions (PSR 72).

McKeever is in overall good physical health except of for a recent diagnoses of high

blood pressure. She has been prescribed medications (PSR 76).  He recently contracted COVID-19 at the jail. She is not vaccinated but is willing to take the vaccine (PSR 76). She suffers from anxiety and depression and is willing to undergo counseling/therapy (PSR 77).

McKeever left high school in the 11th grade due to being pregnant. She later completed her General Equivalency Diploma (PSR 79-80). From 2018 until her arrest in December 2021, McKeever was employed making a nominal salary (PSR 81-82). She does not have the financial wherewithal to pay a fine or cost of prosecution/incarceration (PSR 89).

McKeever is being sentenced upon her guilty plea to Conspiracy to Pay Bribes to Public Officials, in violation of 18 United States Code § 371, a Class D Felony. Her criminal history consists of 2 property crimes, a driving offense and a possession of Schedule V drugs (PSR 52, 53, 55, 59, 61-62).

## SENTENCING AUTHORITIES

Federal sentencing is guided by the overarching principle that a district court impose a sentence that is "sufficient, but not greater than necessary" to achieve the following goals: reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, protect the public, and provide necessary rehabilitation. 18 U.S.C. § 3553(a)(2); *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 570 (2007). In fashioning an appropriate sentence, the Court must also consider the nature of the offense and characteristics of the defendant, the kinds of sentences available, the sentencing guidelines, any pertinent policy statements, the need to avoid unwarranted sentencing disparities, and any need to provide restitution. 18 U.S.C. § 3553(a) (1), (3)-(7).

Although a court should begin any sentencing by correctly calculating the guidelines range, the guidelines are but one of many factors that a court must consider under § 3553(a).

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). The sentencing guidelines are advisory, *United States v. Booker*, 543 U.S. 220, 246 (2005), and a sentencing court may not presume them to be reasonable. *United States v. Nelson*, 555 U.S. 350, 129 S. Ct. 890, 892 (2009) (*per curiam*); *see also United States v. Pauley,* 511 F.3d 468, 473 (4th Cir. 2007). Furthermore, the guidelines do not dictate what constitutes a reasonable sentence. *See United States v. Olhovsky*, 562 F.3d 530, 550 (3d Cir. 2009). A sentencing court may vary from the guidelines based on a categorical disagreement with a particular guideline that does not properly reflect the § 3553(a) factors, or it may vary because given the individual characteristics of a particular case, the guidelines recommend an excessive sentence. *See Kimbrough*, 128 S. Ct. at 570, 576; *United States v. Tomko*, 562 F.3d 558, 571 (3d Cir. 2009) (en banc). The Court must consider all "kinds of sentences available" by statute §3553 (a)(3), even if the "kinds of sentences … established by the guidelines" recommend only prison. *Gall, 552 U.S.* at 59 and note 11.

There is no limitation on the information a court may consider in determining an appropriate sentence. 18 U.S.C. § 3553; United States Sentencing Guidelines Manual ("U.S.S.G") § 1B1.4 (2008). Matters such as age, education, mental or emotional condition, history of abuse, medical condition, employment history, lack of guidance as youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. "These are, however, matters that § 3553(a) authorizes the sentencing judge to consider." *Rita v. United States*, 551 U.S. 338, 365 (2007) (Stevens, J., concurring) (citations omitted); *accord United States v. Chase*, 560 F.3d 828, 830-31 (8th Cir. 2009). The Supreme Court observed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every person as an individual and every case as a unique study in the human failings

that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). A sentence that focuses only on the offense and not the individual characteristics of the defendants or the other § 3553(a) factors is unreasonable. *Olhovsky,* 562 F. 3d at 549. Thus, sentencing courts are charged with the duty to consider the specific characteristics of the defendants, as well as of the offense, in determining an appropriate sentence.

**FACTS AND COMPUTATION OF GUIDELINES**

The facts set forth in the PSR are accurate representations of the evidence collected in the government's investigation. McKeever never denied her participation in this plan hatched to subvert the lawful administration of justice – for a greedy profit - and enable the corruption of corruptible individuals – prison guards and inmates alike. McKeever played a necessary and crucial role in the plan.  After over a year of involvement, she walked away from Cox, this conspiracy and its participants. Then on August 27, 2019, the Justice Department visited her. She agreed to cooperate with the FBI and OIG investigating the case. She testified before a Federal Grand Jury in Richmond on September 17, 2019. Prior to that, she was given a letter containing transactional immunity. She accepted the terms of that free pass, what I call the "Ultimately Rule 35," understanding her future obligations. She was not represented by counsel.

In November 2020, the government obtained an indictment against coconspirators BOP employees Stephen Taylor and Shanice Bullock, mastermind Dontay Cox, Cox's mother Kim Williams, Travian Taylor and the new girlfriend and contraband mule Rameesha Smith. The case was assigned to this Court, who is familiar with its history. The defendants were all arrested and pleaded guilty. Several of the defendants contested the amount of the bribes they either received or paid. The government had obtained bank and financial transfer records as well as telephone

contact records.[1] Prior to the sentencing of Cox in September 2021, the government contacted McKeever to get her to testify in court. She told the agents that she would testify against the two guards but not against Cox or his mother. She denied being threatened. She made herself scarce and, by not fulfilling all her cooperation obligations, expressly broke the terms of that immunity deal. We now know that the drug use and the increased alcohol abuse following the death of her parents clouded her judgment and made her choose to qualify the type of cooperation she would be willing to provide.

The FBI obtained a material witness warrant for her arrest. At sentencing, after showing McKeever's unavailability, the government was allowed to introduce her September 17, 2019 grand jury testimony. This Court reviewed McKeever's testimony and deemed it to be credible and reliable. It sentenced the codefendants accordingly. Having reneged of her transactional immunity, the government then went after McKeever. She was arrested on December 16, 2021 and has been in custody since. After her arrest, she accepted her responsibility and pleaded guilty promptly.[2] She is remorseful and contrite and regrets her participation in this scheme.

The PSR calculates a total offense level of 19 and a CHC III, after a reduction for acceptance of responsibility. This yields an advisory guideline sentence of between 37 and 46 months' imprisonment (PSR 88-89, Custody Section). As agreed by the parties, McKeever submits the appropriate advisory guideline range should be between 24 and 30 months' imprisonment (Level 15, CHC III).

---

1. For instance, the government documented phone contacts between McKeever and Stephen Taylor (98 total - 49 from Taylor to McKeever and 49 the other way). The government documented phone contacts between Taylor and Kim Williams (152 total - 87 from Williams to Taylor and 65 from Taylor to Williams).the government documented phone contact between Taylor and Rameesha Smith (129 total - Smith to Taylor 59 times and Taylor to Smith 70 times).
2. This was somewhat delayed by the intervening Christmas break, allowing time for counsel to research the issue immunity breach and negotiating with fair plea agreement with the government.

**ARGUMENT**

**A.    Nature and Circumstances of the Offense as Related to Sentencing Factors**

Bribery and drug dealing are serious crimes. McKeever understands that she faces a term of imprisonment for those offenses. She further understands that she made the correct decision by walking away from the crime which she reinforced by cooperating. Later she undid her good deeds by stopping the cooperation.

A sentence of 24 months imprisonment is more than sufficient to satisfy the objectives of sentencing for a defendant like McKeever.

**B.  History and Characteristics of Defendant as Related to Sentencing Guidelines**

She is currently 36 years old. She is the mother of two boys who need her love and support. She has a criminal record and allowed herself to be talked into the crime by Cox and Williams.

A sentence of 24 months is appropriate in this case.

**C.  Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide**
**Just Punishment, Afford Adequate Deterrence**
**And Protect the Public**

Section 3553 (a) that Courts should strive to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public and allows for rehabilitation. **A** 24 months sentence followed by a period of supervised release is a significant punishment and provides deterrence - both specific deterrence for this defendant who initially cooperated and then tried to condition that cooperation and general deterrence for other who would consider engaging in this kind of conduct. This sentence also will surely be sufficient to accomplish the stated goals of the federal sentencing statute.

A sentence of 24 months for this one participant is sufficient to rehabilitate, punish, deter and incapacitate McKeever – and maintain supervision of her after her release.

## **CONCLUSION**

For the foregoing reasons and those to be advanced in open court, McKeever respectfully requests that this Court impose a variance sentence of 24 months' imprisonment and 3 years supervised release. This sentence is severe punishment, which achieves specific deterrence and sends a strong message to others.

Further, McKeever requests that the Court recommend to the BOP that she be designated to Alderson, West Virginia, where she may be able to further her education, work and visit with her sons. Given her lack of financial resources, she requests that the Court waives any fine and associated costs of prosecution and incarceration.

Respectfully submitted,

VOLANTE MCKEEVER
DEFENDANT

By:        _____/s/_____
Fernando Groene
FERNANDO GROENE, P.C.
Virginia State Bar No. 24028
364 Mc Laws Circle, Suite 1A
Williamsburg, Virginia 23185
Phone  (757) 603-6173
Fax     (1757) 828.5528
Email: fgroene@groenelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of June 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the counsel of record.

Kenneth R. Simon
Michael C. Moore
Assistant United States Attorneys
UNITED STATES ATTORNEY'S OFFICE
919 East Main Street, Suite 1900
Richmond, VA 23219
Tel.: (804) 819.5400
Email: kenneth.simon2@usdoj.gov
Email: mike.c.moore@usdoj.gov

I certify that I have sent a copy of this document to the following non-filing user by e-mail:

Diane C. DeLuca
UNITED STATES PROBATION OFFICE
701 East Broad Street, Suite 1150
Richmond, Virginia 23219
Tel.: (804) 916.2539
Email: Diane_DeLuca@vaep.uscourts.gov

_____/s/ _____
Fernando Groene
FERNANDO GROENE, P.C.
Virginia State Bar No. 24028
364 Mc Laws Circle, Suite 1A
Williamsburg, Virginia 23185
Telephone: (757) 603.6173
Fax: (1757) 828.5528
Email: fgroene@groenelaw.com