IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 3:21-cr-121-DJN |
| ) | |
| VOLANTE MCKEEVER, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Kenneth R. Simon, Jr. and Michael C. Moore, Assistant United States Attorneys, hereby submits its position with respect to the sentencing of defendant Volante McKeever ("McKeever").

Over the period of more than one year, McKeever used her relationship with a federal inmate and his mother to become an indispensable member of a multi-year bribery scheme of FCI Petersburg correctional officers that facilitated the introduction of narcotics into the prison. At every level of the scheme—introduction of the contraband, bribery payment to correctional officers, coordination with those correctional officers, and maintaining and distributing the profits from the contraband scheme—McKeever played a notable role.

The United States concurs with the Probation Officer's determination that the defendant has a total offense level of 19, a criminal history category of III, and an applicable guideline range of 37-46 months' imprisonment. Pursuant to the plea agreement entered between the parties, the

United States and the defendant agree to recommend a four-level downward variance. Moreover, the parties agree not to seek a sentence outside of the guideline range resulting from that downward variance. The range resulting from the four-level downward variance is 24-30 months.

For reasons more fully explained below, the United States respectfully asks this Court to impose a sentence of 30 months. Such a sentence properly reflects the factors referenced in 18 U.S.C. § 3553(a).

## I. BACKGROUND

Volante McKeever was a girlfriend of Dontay Cox. Presentence Investigation Report ("PSR"), ECF No. 25, ¶ 21. Cox was an inmate at FCI Petersburg-Medium from on or about January 23, 2014, until on or about July 18, 2019, when he was transferred to another institution. Kim Leslie Williams is Cox's mother. *Id.* Stephen Andre Taylor and Shanice Nicole Bullock were, respectively, a case manager and correctional officer at FCI Petersburg-Medium at various times while Cox was incarcerated there. *Id.* During his incarceration at FCI Petersburg-Medium, Cox ran a gambling operation contrary to BOP regulations and, with the assistance of other inmates, obtained and sold contraband, including Suboxone, heroin, cigarettes, and cellular telephones to inmates. *Id.* Travian Taylor, another inmate at FCI Petersburg-Medium, assisted Cox with the distribution of contraband and running the gambling operation. Smith was one of Cox's girlfriends and regularly visited him at FCI-Petersburg-Medium. *Id.* McKeever was also a girlfriend of Cox's. *Id.*

Stephen Taylor and Bullock were both aware of Cox's involvement with the distribution of contraband and operation of a gambling operation. *Id.* Stephen Taylor and Bullock both deliberately failed to enforce BOP regulations barring distribution of contraband and gambling against Cox and other inmates involved with Cox. *Id.* In return for their doing so, Cox facilitated payments to Stephen Taylor and Bullock via various intermediaries, including, but not limited to,

2

Williams, McKeever, and Smith. *Id.* These payments were made via cash deliveries, use of the payment application 'Cash App,' Western Union, and Walmart's Walmart-2-Walmart cash transfer program. *Id.*

Between October 2017, and April 2019, McKeever visited Cox 54 times at FCI Petersburg-Medium. During many of these visits, McKeever delivered contraband, including suboxone, to individuals for them to smuggle into the facility. *Id.* Furthermore, on at least two occasions, McKeever, acting on directions from Cox and Williams, delivered cash in the total approximate amount of $30,000 to Bullock and Stephen Taylor at locations near the prison. *Id.*

Between in or around December 2017, and February 15, 2018, near FCI Petersburg, McKeever delivered an Apple iPhone to Stephen Andre Taylor with the understanding that Stephen Andre Taylor would deliver the iPhone to Cox. *Id.* At that time, Stephen Andre Taylor told McKeever to advise Cox that it was unwise for Cox to use an iPhone because the signals made it more likely that his use of the phone would be detected. *Id.*

Postage stamps were used as currency at FCI Petersburg-Medium. *Id.* However, when inmates lacked funds to pay for contraband or to pay gambling debts, the inmates' relatives or associates outside the prison transferred funds to Williams, Smith, or other co-conspirators, with Cox then crediting the inmates with postage stamps equal in value to the amounts transferred. *Id.* Furthermore, because Cox was paid in postage stamps, this exchange system also allowed him to convert his postage stamp profits into currency that was then used to compensate McKeever, Smith, Williams, and other co-conspirators who assisted with the smuggling of contraband and the payment of bribes to correctional staff. *Id.*

On December 8, 2017, McKeever sent $200 to Stephen Taylor via Western Union. *Id.*

On February 1, 2018, McKeever sent Stephen Taylor $600 via Walmart-2-Walmart. *Id.* On February 18, 2018, McKeever sent $600 to Stephen Taylor via Western Union. *Id.* On February 18, 2018, McKeever sent Stephen Taylor $1,800 via Cash App. On the following dates, McKeever received via Walmart-2-Walmart the following sums from two different associates of inmates at FCI Petersburg-Medium (one of whom had also transferred funds to Williams via Walmart-2-Walmart): (1) $1,500 on January 11, 2018; and (2) $1,400 on February 4, 2018. *Id.*

Between February 1, 2018, and October 25, 2018, McKeever, using her cell phone number xxx-xxx-2522, had 98 voice or text message contacts with Stephen Taylor at his cell phone numbers xxx-xxx-9806 or xxx-xxx-0278. Stephen Taylor lived in North Carolina at the time and did not know McKeever socially. *Id.*

On September 17, 2019, at a proceeding where McKeever was placed under oath, McKeever made the following admissions: (1) McKeever and Cox met in Baltimore, Maryland prior to his incarceration at FCI Petersburg. While Cox was incarcerated at FCI Petersburg, they reconnected in approximately 2016; (2) During the time McKeever and Cox dated, McKeever and Williams visited Cox at FCI Petersburg on a regular basis. McKeever, Williams, and Cox discussed the introduction of contraband, specifically Suboxone and tobacco during some of these visits; (3) McKeever delivered suboxone, tobacco, and a cell phone to Stephen Taylor on behalf of Cox and Williams; (4) McKeever, at the direction of Williams and Cox, would travel from Baltimore, Maryland to locations near FCI Petersburg to make cash payments in the total approximate amount of $30,000 to both Stephen Taylor and Bullock. McKeever specifically recalled paying Stephen Taylor $7,500 at a Target in Petersburg, Virginia. McKeever knew that these payments to Stephen Taylor and Bullock were intended to facilitate and allow the introduction of contraband into FCI Petersburg; (5) Stephen Taylor advised McKeever to meet

him at a location farther from FCI Petersburg to avoid detection of his acceptance of bribes by other correctional officers at FCI Petersburg; (6) At the same time, McKeever received checks from various inmates through their inmate accounts. McKeever discovered through discussions with Williams and Cox that these checks for inmates were sent in relation to the contraband scheme being run by Cox at FCI Petersburg; and (7) While incarcerated at FCI Petersburg, Cox would call McKeever from Stephen Taylor's office.

On November 2, 2021, McKeever was charged in two-count Indictment with Conspiracy (Count One) and Bribery of Public Officials (Count Two). PSR ¶¶ 1,2. The defendant pleaded guilty to Count One on January 31, 2022. PSR ¶ 19.

## II.  POSITION ON SENTENCING

Federal courts imposing sentence are called upon to engage in a multi-step process, analyzing both the procedural and substantive contours of sentencing. The first step in the process—the procedural concerns—requires that a district court correctly "calculate[] the defendant's advisory Guidelines range, consider[] the 18 U.S.C. § 3553(a) factors, analyze[] the arguments presented by the parties, and sufficiently explain[] the selected sentence." *See United States v. Hames*, 757 F. App'x 244, 245 (4th Cir. 2018) (citing United *States v. Lynn*, 592 F.3d 572, 575–76 (4th Cir. 2010)).

"Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (*quoting United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006)). Specifically, Section 3553(a)(1) directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" that section. These include: (1) the nature and circumstances of the offense, as well as the history and characteristics of the defendant; (2) the need for the sentence

imposed to reflect the seriousness of the offense, to promote respect for law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(D). In weighing these factors, the court is directed to consider the kinds of sentences available, pertinent policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(3)-(6).

A consideration of each of these factors warrants a sentence of 30 months.

A. *Nature, Circumstances, and Seriousness of Offense*

The nature, circumstances, and seriousness of the offense warrant a 30-month sentence. The defendant, time and again, engaged in a dangerous contraband scheme that placed Bureau of Prison employees as well as other inmates in danger primarily for the sake of personal enrichment. The defendant was also driven, in part, by her relationship to Dontay Cox. Nevertheless, her role in this scheme was critical to its success. She personally delivered contraband and money to the correctional officers in this case on dozens of occasions. Moreover, she served as a conduit for inmates who were working alongside or buying contraband from Cox while he was imprisoned.

McKeever's actions during the course of the bribery scheme, as detailed in the PSR, show that she was a full and willing partner in the criminal conspiracy: (1) nearly 100 calls and text messages with Stephen Taylor; (2) $3,200 in wire transfers to Stephen Taylor over the course several months; (3) delivering cash in the total approximate amount of $30,000 to Bullock and Stephen Taylor at locations near the prison.; and (4) delivering contraband, including suboxone, to individuals for them to smuggle into FCI Petersburg on many of the 54 visits she made to the

6

prison.

The nature, circumstances, and seriousness of the offense in this case warrant a sentence of 30 months.

### B. *History and Characteristics of the Defendant*

The defendant is a 36-year-old woman from Baltimore, Maryland who has committed several fraud and larceny related offenses. PSR, Part B. The most serious period of incarceration was 60 days of incarceration stemming from a theft offense in 2011. PSR ¶ 53. The defendant is a daily user of marijuana who used up to five times per day. PSR ¶ 78. After the tragic passing of her mother, it appears that she turned to abusing other controlled substances, including Xanax, Oxycodone, and Suboxone. *Id.*

### C. *A 30-Month Sentence Serves the Factors of § 3553*

#### 1. Seriousness of the Offense; Provide Adequate Punishment

The defendant actively participated for more than one year with the bribery of correctional officers and introduction of narcotics into the facility where her boyfriend was housed. Notably, the defendant is not a first-time criminal offender. She has, on several occasions, utilized fraud to enrich herself. As evidenced by her conviction, the defendant's criminal behavior became more serious as she became older. Her conviction in this case represents her most serious offense to date and warrants a significant sentence.

Understandably, the Court recognized the leading role of the defendant's boyfriend in orchestrating this scheme at his sentencing. But the scheme like the one led by the defendant's boyfriend simply cannot work over the course of several years without someone like the defendant—a fully engaged associate outside of the prison system tasked with ensuring that the criminal scheme does not lose steam. Whether procuring additional contraband, coordinating

7

with the correctional officers, or delivering bribe payments and contraband, the defendant's role in the offense was essential and, quite frankly, well-executed. When a private citizen uses their proximity to a federal inmate to undercut the criminal justice system and further a criminal enterprise, courts must offer no reprieve.

      2.     <u>Need to Deter Future Criminal Conduct</u>

A guideline range sentence appropriately accounts for the need to deter both the defendant and other trusted associates of inmates who may be inclined to profit from the inmate's incarceration.

The defendant made numerous decisions that placed her at the heart of a serious bribery scheme. She does not appear to have engaged in this offense because she faced dire straits financially. The deterrence consideration is also broader than McKeever. The Court's sentence must also deter any associate of an inmate who uses the inmate's incarceration to profit. A sentence of 30 months appropriately accounts for the need for specific and general deterrence.

      3.     <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

A 30 month sentence and supervised release term of 3 years will help ensure that the defendant does not again engage in criminal activity for the purpose of achieving greater material wealth.

      4.     <u>Need to Avoid Unwarranted Disparities</u>

The Court has sentenced the other conspirators in this case. A review of their sentences and relative culpability demonstrates that a 30-month sentence for McKeever will not result in an unwarranted disparity. The mastermind Dontay Cox received a sentence of 87 months. The correctional officer who oversaw the scheme and completely undercut his duty – Stephen Taylor – received a sentence of 48 months. Kim Williams, the outside associate who was the hub of the

scheme outside of the prison, received a sentence of 45 months. Rameesha Smith, also a girlfriend of Cox, who provided payments and contraband was sentenced to 27 months. Shanice Bullock was sentenced to 10 months. A 30-month sentence for McKeever, based on her active involvement in a far-reaching bribery conspiracy to introduce narcotics into a prison over more than one year, will not result in an unwarranted disparity between the defendant and other similarly situated defendants.

### III. CONCLUSION

For the reasons stated above, the United States submits that a sentence of 30 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Kenneth R. Simon, Jr.
Michael C. Moore
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Kenneth.Simon2@usdoj.gov